NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **CECILIA LUNA-DIAZ et al.,** | |
| **Plaintiffs,** | Civil Action No. 16-cv-3270 (ES) (JAD) |
| **v.** | **OPINION** |
| **HACKENSACK POLICE DEPARTMENT et al.,** | |
| **Defendants.** | |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court on the motion of plaintiffs Cecilia Luna-Diaz, individually and as <u>administratrix</u> <u>ad prosequendum</u> of the Estate of Elvin Diaz; Kelvi Diaz, individually; and Julian Diaz, individually, (collectively "Plaintiffs") for leave to file a Second Amended Complaint. The undersigned held oral argument on the matter on March 14, 2019, and directed the parties to submit supplemental briefing on particular issues. After carefully considering the parties' submissions,[1] and for good cause shown, and for the reasons set forth below, Plaintiffs' motion is **DENIED**.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

As the parties are intimately familiar with the tragic facts surrounding this case, the Court will incorporate by reference the facts recited in its July 25, 2017 Order granting Plaintiffs' first

---

[1] The Court refers to Plaintiffs' moving brief as "Pls.' Br.," (ECF No. 39-3); to Defendants' opposition brief as "Defs.' Opp'n," (ECF No. 43); to Plaintiffs' reply brief is referred to as "Pls.' Reply," (ECF No. 44); to Plaintiffs' supplemental brief as "Pls.' Supp. Br.," (ECF No. 49); and to Defendants' supplemental brief as "Defs.' Supp. Br.," (ECF No. 50).

motion to amend, (ECF No. 72), and will include here only those facts relevant to deciding the present motion.

Plaintiffs are the immediate family members of the decedent, Elvin Diaz. They filed their original Complaint on June 7, 2016, alleging constitutional rights violations against the Hackensack Police Department and certain of its officers after officers fatally shot Elvin Diaz during an incident at his home, where Plaintiffs also lived. (See generally Compl., ECF No. 1). The Court held an initial pretrial conference on September 6, 2016, and entered a Pretrial Scheduling Order setting preliminary deadlines for discovery and motions to amend. (ECF No. 11). The Court extended those deadlines several times. The deadline for motions to amend the pleadings was extended through and including April 14, 2017, (ECF No. 17); the deadline for fact discovery was extended through and including November 19, 2018, (ECF No. 37); and the deadline for expert discovery was extended through and including May 5, 2019. (ECF No. 42).

On April 13, 2017, within the Court-imposed deadline, Plaintiffs moved for leave to amend the original Complaint. (ECF No. 18). The Court granted Plaintiffs' motion, (ECF No. 22), and the Amended Complaint became the operative amended pleading. (ECF No. 23). Thereafter, the parties continued to engage in discovery and the Court held periodic case management and settlement conferences. On December 14, 2018, twenty months after the Court-imposed deadline, Plaintiffs filed the instant motion for leave to file a Second Amended Complaint. (ECF No. 39). Plaintiffs seek to amend the operative pleading by naming Sergeant Francesco Tripodi ("Sergeant Tripodi") of the Hackensack Police Department as a new defendant and by adding a new count, Count XV. (See generally Second Am. Compl., ECF No. 46-1). Count XV alleges claims for constitutional rights violations against Sergeant Tripodi in his individual and official capacities

pursuant to 42 U.S.C. § 1983 ("Section 1983) and its state law counterpart, N.J. Stat. Ann. 10:6-1 et seq. (the "New Jersey Civil Rights Act" or "NJCRA").[2] (Id.).

Count XV presents the following factual allegations, assumed to be true for purposes of this motion. On May 21, 2015, the date of the incident resulting in Elvin Diaz's death, Sergeant Tripodi received a call from Officer Manny Tavarez, a relative of Elvin Diaz, offering to meet Defendants Sergeant Miguel Molina and Officer Ervin Hernandez at Elvin Diaz's home.[3] (Id. at 24, ¶ 9). Elvin Diaz suffered from a schizoaffective disorder, (id. at 5-6, ¶ 29), and pursuant to the Hackensack Police Department's guidelines on interacting with emotionally disturbed persons, officers were to "make use of friends or relatives who know how to talk to and deal with the person unless there is friction between them." (Id. at 23, ¶¶ 4-6; Ex. B at III.B.9, Gerson Cert., ECF No. 39-1). Sergeant Tripodi was aware of this policy, was aware that Officer Tavarez was helpful in a prior situation involving Elvin Diaz, and believed it was a good idea for Officer Tavarez to arrive on the scene the day of the incident because he "knew how to talk to Elvin Diaz" and because his presence would be in conformance with the emotionally disturbed persons policy ("EDP Policy"). (Second Am. Compl. at 23-24, ¶¶ 7-9). Sergeant Tripodi did not inform Defendants Sergeant Molina or Officer Hernandez that Officer Tavarez would be arriving to assist them in interacting with Elvin Diaz. (Id. at 24, ¶ 10). Unaware that Officer Tavarez would be arriving, Defendants Sergeant Molina, Officer Hernandez, and other officers entered Plaintiffs' home. (Id.). The

---

[2] It is Plaintiffs' position that Count XV also contains a claim for negligence against Sergeant Tripodi. (See Pls.' Reply at 5, ECF No. 44). The Court hesitates to read Count XV as such. Count XV states "[t]he aforesaid conduct constitutes negligence," (Second Am. Compl. at 24, ¶ 12, ECF No. 46-1), but Count XV demands damages from Defendants based solely on the alleged constitutional rights violations under Section 1983 and the NJCRA. (Id. at 25).

[3] The proposed Second Amended Complaint and the parties' related briefing contain spelling variations of Officer Manny Tavarez's surname. For the sake of consistency, the Court uses the spelling of Officer Tavarez's surname used in the proposed Second Amended Complaint.

situation escalated and officers fatally shot Elvin Diaz. (Id. at 24, ¶ 11). According to Plaintiffs, Sergeant Tripodi's conduct constitutes negligence and a violation of Plaintiffs' constitutional rights pursuant to Section 1983 and the NJCRA.[4] (Id. at 24, ¶ 12).

## II.  LEGAL STANDARD

### A.  Standard Applicable on Motions for Leave to Amend Under Rule 15

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend pleadings and states, in pertinent part, that a party may amend its pleading after obtaining the Court's leave. Fed. R. Civ. P. 15 (a)(2); see also Rivera v. Valley Hospital, Inc., No. 15-5704 (JLL), 2017 WL 916436, at *2 (D.N.J. Mar. 8, 2017). The Rule directs that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2). This standard ensures that claims are decided on their merits rather than on mere technicalities. See Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (citing Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6 § 1471 at 505 (2d ed. 1990)).

While District Courts are vested with the broad discretion to grant or deny a motion for leave to amend under Rule 15(a), Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993) (noting "the grant or denial of leave to amend is a matter committed to the sound discretion of the district court"), they must exercise that discretion in light of "Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); Foman v. Davis, 371 U.S. 178, 182 (1962) (finding "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion"). The United States Court of Appeals for the Third Circuit has interpreted that mandate

---

[4] See supra note 2 and accompanying text concerning Plaintiffs' proposed negligence claim.

as requiring that the District Court grant leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive. Grayson v. Mayview State Hosp., 293 F.3d 103, 107-8 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that, generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

## B. Implications of Federal Rule of Civil Procedure 16

While, as discussed above, courts typically resolve motions for leave to amend by applying the liberal "when justice so requires" standard set forth in Federal Rule of Civil Procedure 15(a)(2), there is one notable exception. When a scheduling order sets a deadline for the amendment of pleadings and a party seeks amendment after that deadline has passed, that party must first meet Federal Rule of Civil Procedure 16's "good cause" standard before the Court will move on to a Rule 15 analysis. Stallings ex rel. Estate of Stallings v. IBM Corp., No. 08-3121 (RBK) (JS), 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (citations omitted). This is because motions to amend that are filed after a scheduling order deadline has passed are treated as motions to amend the pretrial scheduling order, see id. (citing Assadourian v. Harb, No. 06-896 (JAG), 2008 WL 4056361, at *2 (D.N.J. Aug. 28, 2008), aff'd, 430 F. App'x 79 (3d Cir. 2011)); see also Dimensional Commc'ns., Inc. v. OZ Optics, Ltd., 148 F. App'x 82, 85 (3d Cir. 2005) (finding that a plaintiff must satisfy Rule 16's "good cause" requirement if seeking to amend the complaint after the deadline for amending pleadings has passed), and, under Rule 16(b)(4), a scheduling order may only be modified for good cause. Fed. R. Civ. P. 16(b)(4). In these situations, the Court must conduct a threshold "good cause" inquiry under Rule 16 because scheduling orders would otherwise "be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired." Harrison Beverage Co. v. Dribeck Imps., Inc.,

133 F.R.D. 463, 469 (D.N.J. 1990); Washington v. Hovensa LLC, 652 F.3d 340 (3d Cir. 2011) (noting that a Magistrate Judge acted within his discretion when denying request to extend expert deadlines where the plaintiff failed to establish good cause to modify the deadlines set out in the operative pretrial scheduling order). Only after the party seeking a late amendment has established "good cause" for the timing of the application will the Court evaluate the proposed amendment under Federal Rule of Civil Procedure 15(a).

A determination of "good cause" under Rule 16 depends on the diligence, or lack thereof, of the moving party. GlobespanVirata, Inc. v. Texas Instruments Inc., No. 03–2854 (GEB), 2005 WL 1638136, at *3 (D.N.J. July 12, 2005). "When examining a party's diligence and whether 'good cause' exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." Physicians Healthsource, Inc. v. Advanced Data Sys. Int'l, LLC, No. 16-3620 (JMV), 2018 WL 3000175, at *3 (D.N.J. June 15, 2018) (collecting cases). The mere absence of prejudice to the non-moving party does not, in itself, constitute "good cause" under Rule 16. GlobespanVirata, 2005 WL 1638136, at *3.

## III.  DISCUSSION

### A.  Analysis of Plaintiffs' Motion Under Rule 16

As Plaintiffs sought to amend their pleading after the April 14, 2017 deadline, (see ECF No. 17), the Court must determine, as a threshold matter, whether Plaintiffs have established "good cause" for the timing of their amendment.

Here, Plaintiffs represent that they did not obtain a factual basis for their proposed amendment until after they received both the EDP Policy and Sergeant Tripodi's deposition

testimony, which, together, allegedly give rise to Plaintiffs' theory that Sergeant Tripodi failed to adhere to the EDP Policy and inform the officers at Elvin Diaz's home that Officer Tavarez would be arriving to assist them. A timeline of discovery is helpful to illustrate Plaintiffs' position:

- The Court requires motions to amend the Complaint or add new parties be filed on or before April 14, 2017. (ECF No. 17).

- Plaintiffs receive the Bergen County Prosecutor's Office's video interview of Sergeant Tripodi in September of 2017, five months after the April 14, 2017 deadline. (Defs.' Opp'n at 7, ECF No. 43; Pls.' Reply at 2, ECF No. 44).

- Plaintiffs receive the EDP Policy on June 7, 2018, fourteen months after the April 14, 2017 deadline. (Pls.' Br. at 1, ECF No. 39-3; Defs.' Opp'n at 3, ECF No. 43).

- Plaintiffs take the deposition of Sergeant Tripodi on November 12, 2018, nineteen months after the April 14, 2017 deadline. (Pls.' Br. at 2, ECF No. 39-3; Ex. C, Gerson Cert., ECF No. 39-1).

- Plaintiffs receive the deposition transcript on December 6, 2018. (Pls.' Br. at 2, ECF No. 39-1).

- Plaintiffs file their motion for leave to file a Second Amended Complaint on December 14, 2018, twenty months after the April 14, 2017 deadline. (Id.)

In contrast, Defendants contend that Plaintiffs had the relevant information for their proposed amendment by, at the earliest, September of 2017 when they received the Bergen County Prosecutor's Office's video interview of Sergeant Tripodi. (Defs.' Opp'n at 3, ECF No. 43). Defendants claim that the video statement is identical to his deposition testimony concerning Officer Tavarez. (Id. at 7). Defendants also contend that at the latest, Plaintiffs had the relevant information for their proposed amendment by June 7, 2018, when Plaintiffs received the EDP Policy. (Id. at 3).

In reply, Plaintiffs argue that Sergeant Tripodi's video interview was not identical to his deposition testimony, and that his deposition testimony revealed new information. (Pls.' Reply at 3-4, ECF No. 44). For instance, Plaintiffs argue that Sergeant Tripodi's deposition testimony

revealed, for the first time, that Officer Tavarez was helpful in diffusing a prior interaction between police and Elvin Diaz; that Sergeant Tripodi was aware of the EDP Policy and mindful of the Policy when speaking to Office Tavarez on the phone the day of the incident; and that Sergeant Tripodi did not inform the responding officers to wait for Officer Tavarez before entering Elvin Diaz's home because "it was a welfare check" and "there was no urgency." (Id. (citations to deposition transcript omitted)).

The Court finds that, viewed as a whole, the record demonstrates that while Plaintiffs may have had some basis for their proposed amendment when they received the EDP Policy on June 7, 2018, it is not unreasonable to conclude that Sergeant Tripodi's deposition testimony "crystallized" Plaintiffs' theory underlying their proposed amendment. (Tr. of Mot. Hr'g 18:5-18:10, ECF No. 52). This says nothing, however, of whether Plaintiffs were diligent in discovering the necessary information. Since the parties have more thoroughly addressed Plaintiffs' diligence, or lack thereof, in their futility arguments concerning the statute of limitations, and since the Court is most interested in resolving the instant motion on its merits, the Court will decline to deny Plaintiffs' motion on Rule 16 grounds and will instead consider whether Plaintiffs' proposed amendment is proper under Rule 15.

### B. Analysis of Plaintiffs' Motion Under Rule 15

As discussed above, Third Circuit jurisprudence requires this Court to grant motions for leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, dilatory motive, or some other equitable consideration that might render the amendment unjust. Grayson, 293 F.3d at 107-8; Arthur, 434 F.3d at 204. Here, Defendants argue that Plaintiffs unduly delayed in bringing the instant motion to amend and that Plaintiffs' proposed amendment would be futile. The Court will address each argument in turn.

## 1. **Undue Delay**

In considering undue delay, the Court notes that "[t]he mere passage of time does not require that a motion to amend a [pleading] be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (internal citations omitted). Only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party," would delay serve as a proper justification for denying leave to amend. Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984). The United States Court of Appeals for the Third Circuit has acknowledged that "[d]elay may become undue when a movant has had previous opportunities to amend a complaint." Cureton, 252 F.3d at 273. "Thus, while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner." Id. (internal citation omitted). The Court must then balance those reasons against the burdens that the movant's delayed amendment would impose upon the Court. Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008) (citing Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir. 1988)).

Here, Defendants' undue delay argument focuses on the length of Plaintiffs' delay, arguing that Plaintiffs "strategically chose to 'sit on their hands' instead of bringing forth a timely motion to amend." (Defs.' Opp'n at 11, ECF No. 43) (reiterating Rule 16 argument that Plaintiffs possessed the relevant knowledge to amend their pleading in September of 2017, when Plaintiffs received the Bergen County Prosecutor's Office's video interview of Sergeant Tripodi). Defendants do not argue that Plaintiffs' delay will result in any additional burden on the Court or on the parties, nor is any such burden obvious from the Court's review of the record. At the March 14, 2019 hearing on this motion, the undersigned confirmed with Defendants' counsel that if the

Court were to grant Plaintiffs' motion, there was no prejudice to Defendants because the parties would not need to take additional discovery and there is no present concern about missing or dying witnesses. (Tr. of Mot. Hr'g 40:21-40:45, ECF No. 52). Defendants' counsel responded that while the parties may need to supplement their expert reports, he did not believe further discovery would be necessary, but that the proposed amendment would "just add[] another theory" to the case. (Id. 41:1-41:14). As mere delay is not an adequate basis for denying leave to amend, Cureton, 252 F.3d at 273, and as Defendants have acknowledged that any delay in filing the instant motion does not prejudice the parties, the Court will not deny leave to amend on undue delay grounds.

## 2. **Futility**

A proposed amendment "is futile if the amended complaint would not survive a motion to dismiss." County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014); In re Burlington Coat Factory Sec. Litig., 114 F. 3d 1410, 1434 (3d Cir. 1997); Allah v. Bartkowski, No. 11-3153 (MAS), 2017 U.S. Dist. LEXIS 74826, *6 (D.N.J. May 17, 2017). When evaluating proposed amended claims, the Court therefore typically evaluates whether they "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). The Court notes that Defendants bear the burden of establishing that Plaintiffs' proposed amendments are futile, and, "given the liberal standard

10

applied to the amendment of pleadings," that burden is a "heavy" one. <u>Pharmaceutical Sales &</u> <u>Consulting Corp. v. J.W.S. Delavau Co.</u>, 106 F. Supp. 2d 761, 764 (D.N.J. 2000); <u>accord</u> <u>Marjam</u>, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'" <u>Schiano v. MBNA</u>, No. 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, at *45 (D.N.J. Feb. 11, 2013). The Court stresses that, in reaching this preliminary determination, it is not making any findings regarding the merits of Plaintiffs' claims or Defendants' defenses thereto.

Here, Defendants argue that Plaintiffs' proposed amendment is futile because it is barred by the statute of limitations and does not relate back to the original Complaint and because the proposed amendment fails to set forth a cognizable legal claim against Sergeant Tripodi. The Court will consider each futility argument in turn.

### i. Statute of Limitations

Defendants argue that Plaintiffs' proposed amendment would be futile, as the claims in proposed Count XV are time-barred and are not safeguarded by Federal Rule of Civil Procedure 15(c)(3)'s relation back doctrine. (Defs.' Opp'n at 15-17, ECF No. 43; Defs.' Supp. Br. at 3-11, ECF No. 50). This Court agrees.

Proposed Count XV seeks relief under Section 1983 and the NJCRA for Sergeant Tripodi's alleged conduct and violation of Plaintiffs' federal and state constitutional rights. While Section 1983 "provides a federal cause of action for the violation of a federal right," state law governs the applicable statute of limitations to a Section 1983 claim. <u>Dique v. N.J. State Police</u>, 603 F.3d 181, 185 (3d Cir. 2010). "A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." <u>Id.</u> (citing <u>Cito</u> <u>v. Bridgewater Twp. Police Dep't</u>, 892 F.2d 23, 25 (3d Cir. 1989)). In New Jersey, the statute of

limitations for personal injury claims is two years. Id. (citing N.J. Stat. Ann. § 2A:14-2). Therefore, Section 1983 claims which arise in New Jersey must be brought "within two years of the accrual of the cause of action." Williams v. Trenton Police Dep't, 591 Fed. App'x 56, 57 (3d Cir. 2015) (internal citation and quotations omitted). This is also true of New Jersey state constitutional claims asserted under the NJCRA.[5] Waselik v. Twp. of Sparta, No. 16-4969 (KM) (JBC), 2017 WL 2213148, at *6 (D.N.J. May 18, 2017) ("NJCRA, like § 1983, is subject to [New Jersey's] general two-year personal injury statute of limitations.") (collecting cases). While state law governs the applicable statute of limitations to a Section 1983 claim, federal law governs when a Section 1983 claim accrues. Dique, 603 F.3d at 185. Federal law provides that "a cause of action accrues, and the state of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (internal citations and quotations omitted). Rather, "a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." Id. (citing United States v. Kubrick, 444 U.S. 111, 120 (1979)); see Waselik, 2017 WL 2213148, at *4 ("For example, a Fourth Amendment claim will accrue at the time of the allegedly wrongful search or seizure. . . . [A] § 1983 false arrest claim accrues at the time of the arrest."). "Accrual does not depend on whether the potential claimant knew or should have known the injury constitutes a legal wrong." Bayette v. Vanamburgh, No. 19-13424 (BRM), 2019 WL 6888408, at

---

[5] To the extent Plaintiffs' proposed Count XV constitutes a claim for negligence, (see supra note 2 and accompanying text), negligence claims are also subject to a two-year statute of limitations, N.J. Stat. Ann. § 2A:14-2 ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within [two] years next after the cause of any such action shall have accrued."), which generally starts to run at the time of the alleged injury. Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 479 (D.N.J. 2002).

*2 (D.N.J. Dec. 17, 2019) (citing <u>Giles v. City of Philadelphia</u>, 542 F. App'x 121, 123 (3d Cir. 2013)).

Here, officers shot and killed Elvin Diaz inside his and Plaintiffs' home on May 21, 2015. (Second Am. Compl. at 4-5, ¶¶ 20, 27 ECF No. 46-1). Plaintiffs moved to amend their First Amended Complaint to name Sergeant Tripodi as a defendant on December 14, 2018. (<u>See</u> ECF No. 39). Plaintiffs' proposed amendment asserts Section 1983 and NJCRA claims against Sergeant Tripodi for his alleged conduct on the day Elvin Diaz was shot—specifically, Sergeant Tripodi's alleged failure to act in accordance with the EDP Policy. Thus, the statute of limitations on Plaintiffs' claims ran two years after the date of the incident on May 21, 2015, or until May 21, 2017. As Defendants correctly argue, by the time Plaintiffs moved to amend their First Amended Complaint on December 14, 2018, more than three years had elapsed since the May 21, 2015 incident, thereby placing Plaintiffs' claims against Sergeant Tripodi outside the two-year statute of limitations. (Defs.' Opp'n at 16, ECF No. 43). Because the statute of limitations bars Plaintiffs' proposed claims against Sergeant Tripodi, Plaintiffs' cannot amend their complaint to add Sergeant Tripodi as a defendant unless the proposed Second Amended Complaint relates back to June 7, 2016, the date Plaintiffs filed their original Complaint.

### ii. Relation Back Under New Jersey's Fictitious Party Rule and Discovery Rule

Federal Rule of Civil Procedure 15(c) governs relation back of amendments and provides that an amended pleading relates back to the date of the original pleading if relation back is allowed under the law that provides the applicable statute of limitations. Fed. R. Civ. P. 15(c)(1)(A). As noted above, New Jersey law provides the two-year statute of limitations on Plaintiffs' proposed claims. The Court must therefore look to New Jersey law to determine whether Plaintiffs' proposed amendment relates back to the date of the original pleading. Plaintiffs invoke two

theories under New Jersey law—the fictitious party rule and the discovery rule—to support their argument that the proposed amendment relates back to the date of the original Complaint. (Pls.' Reply at 7-8, ECF No. 44; Pls.' Supp. Br. at 1-9, ECF No. 49).

New Jersey's fictitious party rule provides, in relevant part, that "[i]n any action . . . if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification." N.J. Ct. R. 4:26-4. Thus, the rule "allows a plaintiff to initially name a 'fictitious defendant' in place of an actual person . . . and subsequently amend the complaint to add a newly identified party even after the statute of limitations has expired." Carroll v. SetCon Indus., No. 10-4737, 2011 WL 736478, at *3 (D.N.J. Feb. 22, 2011) (citing N.J. Ct. R. 4:26-4). Three elements must be met for Plaintiffs to invoke the fictitious party rule: "1) the complaint must contain a description sufficient to identify the defendant; 2) the plaintiff must have exercised due diligence to ascertain the defendant's true name before and after filing the complaint; and 3) application of the fictitious party [rule] must not prejudice the defendant." Estate of Lowther v. City of Newark, No. 13-7244 (KM) (MAH), 2015 WL 13236826, at *2 (D.N.J. Nov. 6, 2015) (citing Ortiz ex rel. Rivera v. City of Camden, No. 11-2300, 2013 WL 1811895, at *3 (D.N.J. Apr. 2, 2013)).

Here, both Plaintiffs' original Complaint and Amended Complaint plead a cause of action against fictitious defendants that reads:

> [D]efendants John and Jane Does 1-10 (said names being fictitious) were police officers and other unknown persons who were involved in the illegal entry of the decedent's premises, the illegal detention of the plaintiffs, Cecilia Luna-Diaz and Kelvi Diaz, and excessive force, i.e. shooting and killing the decedent, Elvin Diaz, and the deprivation of each plaintiff's civil rights. . . . Defendants John and Jane Does 1-10 (said names being fictitious) have violated plaintiffs' civil rights and due process rights pursuant to the New Jersey and the United States Constitution.

(Compl. at 20-21, ¶¶ 2-3, ECF No. 1; Am. Compl. at 22-23, ¶¶ 2-3, ECF No. 23). Plaintiffs contend that this Count puts "[a]ll police officers who entered the home and had any involvement with the decedent, Elvin Diaz . . . on notice of the claim." (Pls.' Supp. Br. at 8, ECF No. 49). These specific acts, however—illegal entry, illegal detention, excessive force—are not the basis of the claims against Sergeant Tripodi, and Plaintiffs acknowledge as much. (Id. at 9). Rather, Plaintiffs argue that the Complaint should have put Sergeant Tripodi on notice of the claims against him because he was part of the "category" of fictitious defendants that entered Plaintiffs' home. (Id. at 8-9 (citing Lewis v. Brown, No. 04-6063 (NLH) (AMD), 2010 WL 1371939, at *5 (D.N.J. Mar. 30, 2010) ("New Jersey Civil Procedure Rule 4:26-4 permits a plaintiff to amend his complaint to identify the proper party, as long as a John Doe fictitious designation was included for that specific category of defendant."))). To support this proposition, Plaintiffs rely on Sergeant Tripodi's November 12, 2018 deposition testimony, in which he testifies that he arrived and entered Plaintiffs' home on the date of the incident after hearing over the police radio that shots were fired. (Id. at 8; Ex. C, Gerson Supp. Cert., ECF No. 49-1). Thus, Plaintiffs argue that since Officer Tripodi was present at Plaintiffs' home, he should have been aware that Plaintiffs would potentially bring claims against him. (Pls.' Supp. Br. at 9, ECF No. 49).

In opposition, Defendants argue that the "John Doe" Count for illegal entry, illegal detention, and excessive force claims do not put Sergeant Tripodi on notice of the particular claim against him now—the claim that he violated Plaintiffs' constitutional rights when he allegedly failed to act in accordance with the EDP Policy. (Defs.' Supp. Br. at 12, ECF No. 50). Defendants also argue that by January 19, 2017, Plaintiffs were in possession of related Hackensack Police Department Investigation Reports connecting Sergeant Tripodi to the incident and indicating that he had provided the Bergen County Prosecutor's Office with a recorded video interview. (Id. at

12). Plaintiffs received the video interview in discovery in September of 2017, three months after the statute of limitations expired on the proposed claims against Sergeant Tripodi.

The Court is not persuaded that the fictitious party rule safeguards Plaintiffs' proposed amendment. The link between the described claims in the Complaint's "John Doe" Count and Plaintiffs' proposed claim against Sergeant Tripodi is nebulous. Plaintiffs' proposed claim against Sergeant Tripodi is not that he contributed to or participated in the illegal entry of Plaintiffs' home, or the illegal detention of Plaintiffs, or the excessive force used against Plaintiffs. Plaintiffs' proposed claim is that Sergeant Tripodi failed to act in accordance with the EDP Policy when he did not notify the officers at Plaintiffs' home that Officer Tavarez was on the way to assist. That claim did not exist in the Complaint's "John Doe" Count because the claim only revealed itself further along in discovery. The fictitious party rule is not a rule that vitiates the statute of limitations for new claims. It is a rule to protect the plaintiff when the plaintiff cannot identify the actors in the claims originally plead. Plaintiffs repeatedly argue that the specific claim against Sergeant Tripodi did not emerge until November of 2018, when Plaintiffs had both the EDP Policy and Sergeant Tripodi's deposition testimony. This is precisely why the fictitious party rule, contemplated at the drafting of Plaintiffs' original Complaint, does not help Plaintiffs here. The Court will next consider whether Plaintiffs' argument supports the application of the discovery rule.

New Jersey's discovery rule may toll the statute of limitations on a claim "when injured parties reasonably are unaware that they have been injured or, although aware of an injury, do not know that the injury is attributable to the fault of another." Fuqua v. Bristol-Myers Squibb Co., 926 F. Supp. 2d 538, 545 (D.N.J. Feb. 15, 2013) (quoting Baird v. American Med. Optics, 713 A.2d 1019, 1025 (N.J. 1998)). In such a scenario, "the statute of limitations begins to run when

the plaintiff is aware, or reasonably should be aware, of facts indicating that she has been injured through the fault of another, not when a lawyer advises her that the facts give rise to a legal cause of action." Baird, 713 A.2d at 1026; see also Cruz v. City of Camden, 898 F. Supp. 1100, 1113-14 (D.N.J. 1995). This rule is "essentially a rule of equity," and "[d]etermining whether it applies requires identification, evaluation, and weighing of the equitable claims of the parties." Lewis, 2010 WL 1371939, at *5 (quoting Abboud v. Viscomi, 543 A.2d 29, 32 (N.J. 1988)) (internal quotations omitted).

Plaintiffs' discovery rule argument is similar to their Rule 16 argument. As noted above, the deadline for Plaintiffs to amend their Complaint was April 14, 2017. The two-year statute of limitations on Plaintiffs' claims expired approximately one month later on May 21, 2017. While Plaintiffs' injury arose on May 21, 2015, the date of the incident, Plaintiffs argue that they were not aware of the facts—specifically, the existence of the EDP Policy—supporting their theory that Sergeant Tripodi was at fault until they received the EDP Policy on June 7, 2018. (Pls.' Supp. Br. at 3-4, ECF No. 49). Plaintiffs stress that it is Sergeant Tripodi's violation of the EDP Policy that forms the basis of the proposed claims against him. (Id. at 3). Plaintiffs' receipt and review of the EDP Policy then triggered Plaintiffs' need to depose Sergeant Tripodi. (Tr. of Mot. Hr'g 29:8-29:10, ECF No. 52).

It appears from Plaintiffs' argument that despite propounding a notice to produce on October 11, 2016, requesting "[a]ny and all written policies and procedures of the Hackensack Police department in place as of May 2015," it was not until Plaintiffs received certain deposition testimony in February of 2018 that they were prompted to specifically request the EDP Policy in discovery. (Pls.' Supp. Br. at 5-6 and n.1, ECF No. 49). For instance, at the February 8, 2018 deposition of the Hackensack Police Department's officer in charge, Plaintiffs' counsel asked the

officer, among other things, whether the policy on interacting with emotionally disturbed persons is a written policy. (Id. at 5; Ex. A at 31:4-31:10, Gerson Supp. Cert., ECF No. 49-1). The officer answered affirmatively, and Plaintiffs' counsel responded: "I'll ask for a copy of that policy. I don't believe I have it." (Pls.' Supp. Br. at 5-6, ECF No. 49; Ex. A at 31:12-31:18, Gerson Supp. Cert., ECF No. 49-1).

Defendants argue, however, that "[i]f Plaintiff[s] were certain that such a policy existed for dealing with emotionally disturbed persons, then plaintiffs' Notice to Produce should not have been so overbroad" with its "written policies and procedures" request, and, alternatively, Plaintiffs could have subpoenaed or made an Open Public Records Act request for the EDP Policy earlier than February of 2018. (Defs.' Supp. Br. at 5, 7-8, ECF No. 50). Defendants also argue that Plaintiffs received a report on the Bergen County Prosecutor's Office's video interview of Sergeant Tripodi on January 19, 2017, which indicated that:

> (1) Sergeant Tripodi had received a cell phone call from Officer Tavera asking if he could respond to [Plaintiffs' home address]; (2) Sergeant Tripodi had authorized Officer Tavera to respond . . . ; (3) Sergeant Tripodi had authorized Officer Tavera to respond since he knew that Tavera was related to Decedent Elvin Diaz, and since Officer Tavera had responded previously to a Suspicious Person call concerning Elvin Diaz; and (4) that Sergeant Tripodi had informed radio dispatch that Officer Tavera was responding to [Plaintiffs' home address].

(Id. at 6-7). Plaintiffs subsequently received the actual video interview in September of 2017. (Defs.' Opp'n at 7, ECF No. 43; Pls.' Reply at 2, ECF No. 44). Plaintiffs previously argued, however, as part of their Rule 16 argument, that it was not until the November 12, 2018 deposition of Sergeant Tripodi that they learned certain information for the first time that "crystallized" the proposed claims against him—i.e., that Officer Tavarez was helpful in diffusing a prior interaction between police and Elvin Diaz; that Sergeant Tripodi was aware of the EDP Policy and mindful

of the Policy when speaking to Office Tavarez on the phone the day of incident; and that Sergeant Tripodi did not inform officers to wait for Officer Tavarez before entering Elvin Diaz's home because "it was a welfare check" and "there was no urgency." (See Pls.' Reply at 3-4, ECF No. 44).

Neither party presents a particularly compelling argument on the applicability of the discovery rule, nor does Plaintiff offer caselaw demonstrating how Courts have applied the discovery rule in similar factual circumstances. Plaintiffs were, without question, aware of the extent of their injuries on May 21, 2015, the date of the incident. Nonetheless, Defendants did not produce the EDP Policy to Plaintiffs pursuant to Plaintiffs' request for "[a]ny and all written policies and procedures of the Hackensack Police Department in place as of May 2015" until June 7, 2018, after Plaintiffs specifically asked for it. At the same time, it took nearly two years to investigate whether Sergeant Tripodi was at fault in some way, particularly since Plaintiffs received the Bergen County Prosecutor's Office's report on Sergeant Tripodi's video interview in January of 2017. The Court hesitates to apply the discovery rule here where Plaintiffs could be certain of the date of their injuries and where Plaintiffs knew of a certain level of Sergeant Tripodi's involvement by early 2017, prior to the expiration of the statute of limitations on May 21, 2017.

As neither the fictitious party rule nor the discovery rule is applicable to Plaintiffs' proposed amendment, Plaintiffs' proposed amendment is time-barred under New Jersey's two-year statute of limitations. The proposed amendment is also futile for the reasons set forth in the following subsection.

### iii. **Failure to State a Cognizable Legal Claim**

Defendants argue that Plaintiffs' proposed amendment would be futile because it does not plead a cognizable claim against Sergeant Tripodi under Section 1983 or the NJCRA.[6] (Defs.' Opp'n at 13, ECF No. 43). Defendants posit two theories in support of their argument: first, that Sergeant Tripodi's inaction (i.e., his alleged failure to notify Defendants Sergeant Molina and Officer Hernandez that Officer Tavarez would be arriving at Plaintiffs' home) cannot constitute a violation of Plaintiffs' constitutional rights, and second, that Sergeant Tripodi's alleged failure to act in accordance with the EDP Policy cannot form the basis of liability for a constitutional rights violation under Section 1983. (Id. at 13-15).

Section 1983 "provides a cause of action for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citations omitted). "Thus, police officers who, acting under color of state law, violate an individual's federal constitutional or statutory rights are subject to liability under § 1983." Id. "[T]o state a valid claim for relief under § 1983, a plaintiff

---

[6] Defendants do not argue that Plaintiffs' proposed amendment fails to plead a cognizable claim for negligence against Sergeant Tripodi. Plaintiffs take this to mean that the proposed negligence claim survives Defendants' futility arguments. (See Pls.' Reply at 5, ECF No. 44). To the extent Count XV can be read as a negligence claim, (see supra note 2 and accompanying text), the Court has already found in the preceding section that it is barred by New Jersey's two-year statute of limitations, N.J. Stat. Ann. § 2A:14-2. Additionally, neither party raises whether Plaintiffs timely served Sergeant Tripodi with a notice of a state law tort claim as required by the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq. The NJTCA "requires notice of a claim of injury against a public entity or public employee to be presented within ninety days of the accrual of a cause of action." Brown v. City of Atlantic City, No. 15-6711 (RMB) (AMD), 2019 WL 4126753, at *7 (D.N.J. Aug. 30, 2019) (citing N.J. Stat. Ann. § 59:8-3) ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter."). If Plaintiffs did not file a notice of claim within ninety days of the claim's accrual, Plaintiffs are forever barred from recovering damages from Sergeant Tripodi on the state law tort claim. N.J. Stat. Ann. § 59:8-8.

must allege 'the violation of a right secured by the Constitution and laws of the United States, and

. . . that the alleged deprivation was committed by a person acting under color of state law.'"

Craven v. Leach, No. 14-1860 (ES), 2015 WL 12698442, at *3 (D.N.J. Oct. 1, 2015) (quoting

West v. Atkins, 487 U.S. 42, 48 (1988)). Likewise, Section 1983's state law counterpart, the

NJCRA, provides, in pertinent part, a private cause of action to

> [a]ny person who has been deprived of any substantive due process
> or equal protection rights, privileges or immunities secured by the
> Constitution or laws of the United States, or any substantive rights,
> privileges or immunities secured by the Constitution or laws of this
> State, . . . by a person acting under color of law.

N.J. Stat. Ann. § 10:6-2(c). "The NJCRA is . . . generally interpreted nearly identically to § 1983

and claims under the NJCRA are generally contemporaneous with and subject to the same defenses

and immunities as those brought under § 1983." O'Neal v. Middletown Twp., No. 18-5269 (BRM)

(LHG), 2019 WL 77066, at *8 (D.N.J. Jan. 2, 2019) (citing Trafton v. City of Woodbury, 799 F.

Supp. 2d 417, 443-44 (D.N.J. 2011)). "Therefore, the Court will analyze Plaintiffs' NJCRA claims

through the same lens of § 1983." Id. (quoting Trafton, 799 F. Supp. 2d at 443-44) (internal

quotations omitted).

Plaintiffs do not state a cognizable claim for relief under Section 1983 or, by analogy, under

the NJCRA. Plaintiffs repeatedly argue that the basis of their proposed Section 1983 and NJCRA

claims against Sergeant Tripodi is that he failed to act in accordance with the EDP Policy, thereby

violating Plaintiffs' constitutional rights. But the proposed amendment does not identify what

constitutional rights Sergeant Tripodi violated, nor does it establish any link between Sergeant

Tripodi's conduct and a constitutional right. Even accepting Plaintiffs' factual averments as true,

that Sergeant Tripodi did in fact violate the EDP Policy on the day of the incident, this is not the

equivalent of alleging a constitutional or statutory rights violation for which Section 1983 and the NJCRA exist to provide a cause of action.

Plaintiffs' allegations against Sergeant Tripodi are not based on Sergeant Tripodi's affirmative actions, but rather on his inaction, that he did not contact Defendants Sergeant Molina and Officer Hernandez and direct them to wait for Officer Tavarez before interacting with Elvin Diaz. Plaintiffs contend that inaction can equate to a violation of constitutional rights when certain "special relationship" factors exist between the state and an individual. (Pls.' Reply at 5-7, ECF No. 44). Though Plaintiffs do not expressly use the term state-created danger, it appears that by citing to Van Order v. Borough of Woodstown, 5 F. Supp. 3d 676, 680-81 (D.N.J. 2014), Plaintiffs are referring to the four factors that must be met for a state actor to be held liable for a constitutional violation under the state-created danger doctrine. In Van Orden, the plaintiffs expressly pleaded a state-created danger claim under Section 1983 for a violation of their Fifth and Fourteenth Amendment rights. Id.

"The Supreme Court has long recognized that the Constitution generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Johnson v. Bilotta, No. 16-8879 (ES), 2018 WL 534157, at *6 (D.N.J. Jan. 23, 2018) (quoting Ye v. United States, 484 F.3d 634, 636 (3d Cir. 2007)) (internal quotations omitted). However, there are two exceptions to the rule that the government's inaction cannot violate an individual's constitutional rights: the special relationship exception and the state-created danger doctrine. Johnson, 2018 WL 534157, at *6. For a state actor to be held liable under the state-created danger doctrine, four elements must be met:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the

conscience; (3) a relationship between the state and plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that had rendered a citizen more vulnerable to danger than had the state not acted at all.

Van Orden, 5 F. Supp. 3d at 680-81 (quoting Henry v. City of Erie, 728 F.3d 275, 281-82 (3d Cir. 2013)); Johnson, 2018 WL 534157, at *7 (quoting Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006)).

At the March 14, 2019 hearing on the instant motion to amend, the Court explored the applicability of the state-created danger doctrine to Plaintiffs' proposed amendment and directed the parties to file supplemental briefing on the issue. (See generally Pls.' Supp. Br., ECF No. 49; Defs.' Supp. Br., ECF No. 50). Having considered the parties' supplemental arguments, the Court finds that its inquiry on the issue begins and ends with whether Plaintiffs' proposed amendment alleges a constitutional or statutory violation pursuant to Section 1983 at all. The Court has already found that it does not. It follows then that the state-created danger doctrine cannot save Plaintiffs' proposed amendment here. Accordingly, Plaintiffs' proposed amendment is futile insofar as it fails to state a plausible legal claim under Section 1983 and the NJCRA.

IV.    **CONCLUSION**

For the reasons stated herein, Plaintiffs' motion for leave to file a Second Amended Complaint, (ECF No. 39), is **DENIED**.

**SO ORDERED**

**JOSEPH A. DICKSON, U.S.M.J.**

cc:    Hon. Esther Salas, U.S.D.J.

23